**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WORLDWIDE DIRECTORIES, S.A. DE
C.V., and IDEAS INTERACTIVAS, S.A. DE
C.V.

                                    Plaintiffs,

            v.                                          Civ. Action No. 14-cv-7349 (AJN)

YAHOO! INC., YAHOO DE MEXICO, S.A.
DE C.V., BAKER & MCKENZIE, and
BAKER & MCKENZIE, S.C.

                                    Defendants.


**BAKER & MCKENZIE LLP'S AND BAKER & MCKENZIE, S.C.'S JOINT**
**MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS' OPPOSITION TO**
**DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT**

Charles E. Clayman                          John K. Villa (*pro hac vice* )
Isabelle A. Kirshner                        Ryan T. Scarborough (*pro hac vice*)
Wayne E. Gosnell, Jr.                       Ana C. Reyes (*pro hac vice*)
Clayman & Rosenberg LLP                     Williams & Connolly LLP
305 Madison Avenue, Suite 1301              725 Twelfth Street, N.W.
New York, NY 10165                          Washington, DC 20005
Tel.: (212) 922-1080                        Tel.: (202) 434-5000
Fax: (212) 949-8255                         Fax: (202) 434-5029
clayman@clayro.com                          jvilla@wc.com
kirshner@clayro.com                         rscarborough@wc.com
gosnell@clayro.com                          areyes@wc.com

*Attorneys for Defendant*                   *Attorneys for Defendant*
*Baker & McKenzie, S.C.*                    *Baker & McKenzie LLP*


Dated:  May 22, 2015

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................5

I.    PLAINTIFFS DO NOT PLEAD FACTS WHICH, IF TRUE, WOULD ESTABLISH SUFFICIENT TIES TO THE UNITED STATES. ......................5

II.    PLAINTIFFS DO NOT HAVE STANDING. ...................................................8

    A.    Plaintiffs Cannot Prove Proximate Causation.........................................9

    B.    Plaintiffs Cannot Establish an Injury to a Recognized Property Interest.............11

III.    PLAINTIFFS DO NOT ALLEGE ANY PATTERN OF RACKETEERING ACTIVITY OR A RICO ENTERPRISE..........................................................11

    A.    Plaintiffs Do Not Allege a Pattern of Racketeering Activity................11

    B.    Plaintiffs Do Not Allege a RICO Enterprise.........................................14

IV.    PLAINTIFFS DO NOT ALLEGE THE ELEMENTS OF ANY PREDICATE ACT OR CLAIM UNDER NEW YORK LAW.................................................15

    A.    Plaintiffs' Allegations of Violation of RICO Predicate Acts Are Conclusory. .........................................................................................16

    B.    The RICO Conspiracy Claim Should Be Dismissed. ...........................17

    C.    Plaintiffs' New York Law Claims Cannot Be Salvaged.......................18

V.    LEAVE TO AMEND SHOULD BE DENIED AS FUTILE. ...........................19

CONCLUSION.....................................................................................................20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Almazan v. Almazan*, No. 14-cv-311 (AJN), 2015 WL 500176 (S.D.N.Y. Feb. 4, 2015) ...................................................................................................18, 19

*Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc.*, 100 F. Supp. 2d 178 (S.D.N.Y. 2000) ..............................................................19

*Aronov v. Mersini*, No. 14-cv-7998 (PKC), 2015 WL 1780164 (S.D.N.Y. Apr. 20, 2015) ...........................................................................................................18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................5, 14, 16, 18, 19, 20

*Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122 (2d Cir. 2008) (per curiam) ...................20

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, No. 14-CV-121 (JPO), 2014 WL 6077247 (S.D.N.Y. Nov. 14, 2014) ...............................................17

*Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229 (S.D.N.Y. 2012) .....................5, 6, 7, 8

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999) .........................14

*DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) ........................................................13

*DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242 (2d Cir. 1987) .................15, 16

*European Community v. RJR Nabisco, Inc.*, 764 F.3d 129 (2d Cir. 2014) ....................................8

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994) ..................................8

*H.J. Inc v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989) ......................................................11

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010) .................................................9

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992) ............................................9

*Kimm v. Chang Hoon Lee*, No. 04 Civ. 5724 (HB), 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005), *aff'd sub nom. Kimm v. Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14 (2d Cir. 2006). ...................................................................17

*Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180 (S.D.N.Y. 1999) ......................................4

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923(CSH), 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) ...............................................17

*Norex Petroleum Ltd. v. Access Industries, Inc.*, 631 F.3d 29 (2d Cir. 2010) (per curiam) ..........................................................................................................6, 8

*Petroleos Mexicanos v. SK Engineering & Construction Co.*, 572 F. App'x 60 (2d Cir. 2014) .....................................................................................................7, 8

*Reich v. Lopez*, 38 F. Supp. 3d 436, 447 (S.D.N.Y. 2014) ....................................7, 8

*Sekhar v. United States*, 133 S. Ct. 2720 (2013)......................................................17

*Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124 (2d Cir. 1994) .........................18, 19

*Westgate Fin. Corp. v. Beinoni of N.Y. Inc.*, No. 10 Civ. 8102 (TPG), 2012 WL 219334 (S.D.N.Y. Jan. 25, 2012)..................................................................17, 18

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998)........................................4

## FEDERAL STATUTES

15 U.S.C. §§ 78dd-1, *et seq.* (FCPA).......................................................................5, 12

18 U.S.C. § 1951 (Hobbs Act)................................................................................16,17

18 U.S.C. § 1952 (Travel Act)..........................................................................5, 12, 17

18 U.S.C. §§ 1961-68 (RICO) ............................................................................. *passim*

## OTHER AUTHORITIES

Fed. R. Civ. P. 8(a) .....................................................................................................17

Fed. R. Civ. P. 9(b) .................................................................................................18, 19

Defendants Baker & McKenzie LLP ("Baker U.S.") and Baker & McKenzie, S.C. ("Baker Mexico") (together, the "Baker Defendants") jointly submit this reply brief in support of their motion to dismiss the Amended Complaint filed by Worldwide Directories, S.A. de C.V. and Ideas Interactivas, S.A. de C.V. ("Plaintiffs").

## INTRODUCTION

Plaintiffs' Opposition confirms their colorful imagination, but it does nothing to rebut the numerous legal grounds to dismiss this suit. Their Amended Complaint, which addresses a dispute among Mexican entities concerning conduct that occurred entirely in Mexico and that is being resolved by the Mexican courts, has no place before this Court.

Rather than refute the argument that every well-pled fact alleged, if proven, would not show sufficient conduct in the United States, Plaintiffs double down by alleging more supposedly suspicious events in Mexico.  Rather than refute the point that all of the evidence in this case will come from Mexican judges and court staff whose testimony must be secured under the Hague Convention, Plaintiffs add outlandish new allegations involving even more events and witnesses in Mexico.  Rather than address the fact that a large and growing number of Mexican courts—including federal courts over which Judge Azar has no authority—have rejected the decision of a law clerk acting as a temporary judge, Plaintiffs make the puzzling, illogical, and ultimately fatal argument that it does not matter if their claim on the merits is wrong under Mexican law, effectively conceding the absence of proximate cause.

There are multiple reasons why the Court should dismiss this case with prejudice.  The Baker Defendants will only address the most extreme examples in reply.  *First*, Plaintiffs acknowledge that RICO cannot apply extra-territorially under the predicate acts they allege without a substantial nexus to the United States, and they concede that this case involves extraterritorial conduct "largely carried out in Mexico."  Plaintiffs' Opposition ("Opp.") at 14.

1

Despite the clear invitation for them to allege facts in the United States, their allegations establish that this supposed scheme was *only* carried out in Mexico.  The most Plaintiffs can say is that their analysis of metadata on a thumb drive shows that the documents were "possibly drafted on a computer owned by Defendant Baker & McKenzie."  Amended Complaint ("Am. Compl.") ¶ 18.  There are no well-pled facts, which, if proven, demonstrate a single event occurring in the United States in connection with the Baker Defendants, and certainly no substantial nexus to the United States.  Tellingly, Plaintiffs do not point to a single case in which a U.S. court has undertaken the unprecedented task of taking testimony from dozens of judges and court officials spanning all levels of a foreign judiciary, much less one based on no ties to the United States.  Instead, their new allegations, which range beyond the Amended Complaint, identify scores of Mexican court personnel who would need to be deposed.  *See* Opp. at 5–12. The case does not belong in the United States and should be dismissed.  *See infra* Part I.

      *Second*, Plaintiffs' Opposition confirms that they do not have RICO standing.  Plaintiffs do not contest the reasoning of the 502-page State Appellate Court judgment reversing Mr. Segu's decision in their favor, the 597-page federal *amparo* panel decision affirming the State Appellate Court, or the President of the Mexican Supreme Court's rejection of Plaintiffs' *recurso de revisión*.  *See* Baker Motion ("Baker Mot.") at 13 (citing Ex. 9).  Instead, Plaintiffs now inexplicably contend that the Mexican case record is "not relevant to the inquiry before the court," Opp. at 14 n.2, and dismiss the adverse federal *amparo* decision by alleging, without any factual support whatsoever, that "[u]pon information and belief, a decision favorable to Plaintiffs was about to be issued."  Am. Compl. ¶ 118.  Plaintiffs contend that "this case is not about whether or not Yahoo breached an agreement with Plaintiffs, or even whether or not Yahoo owes Plaintiffs $2.7 billion."  Opp. at 4.  These assertions confirm that dismissal is appropriate.

Plaintiffs cannot establish proximate causation if they had no right to the judgment in the first place. Plaintiffs have not alleged, much less shown, that any one of the multiple appellate court judgments reversing Mr. Segu's decision was legally incorrect. *See infra* Part II.A. As an independent ground for dismissal, they concede that they are still pursuing one additional avenue of possible appeal before the Supreme Court of Mexico. Since the claim is still pending in the Mexican courts, Plaintiffs do not even have a legally-cognizable property interest upon which they can sue. *See infra* Part II.B.

*Third*, Plaintiffs cannot maintain their RICO claim because they do not meet the continuity elements of RICO. Plaintiffs concede that their alleged scheme is limited to the State Appellate Court Decision. Plaintiffs argue that Judge Azar is the "agent" of the alleged scheme and that the scheme extends as far as the "breadth of Judge Azar's reach." Opp. at 3, 12. Yet glaringly, Plaintiffs have not addressed, much less rebutted, that Judge Azar lacks any authority over Mexico's *federal* courts. While they claim that the federal *amparo* court was poised to rule in their favor, there is no allegation—much less factual support—that the federal *amparo* court was tainted. In short, there is no legal basis to establish the continuity elements of RICO where the scheme as alleged by Plaintiffs extends only to the state court proceedings and the federal courts have concurred that Mr. Segu's judgment was without legal basis.[1] *See infra* Part III.

*Finally*, Plaintiffs have engaged in impermissible group pleading and fail to allege the elements of any RICO predicate act or violation of any New York law. *See infra* Part IV.

\*   \*   \*

---

[1] Notably, despite asserting that the judicially noticeable facts from the Mexican court decisions are "extraneous," Opp. at 4, Plaintiffs do not dispute that the Court may "consider[] portions of the Record from the case in Mexico." *Id.* at 14. They did not file an opposition to the Baker Defendants' Request for Judicial Notice.

Plaintiffs make a number of accusations and factual assertions that are found nowhere in their Amended Complaint.  Even putting aside that a plaintiff cannot amend his complaint through an opposition to a motion to dismiss,[2] Plaintiffs' new allegations are of no moment.  For example, Plaintiffs maintain for the first time in their Opposition that Mr. Segu relied on a damages analysis by an independent third-party expert, *see* Opp. at 2—a fact which, if true, they presumably knew about but chose not to allege when they filed both their Complaint and Amended Complaint.  Similarly, Plaintiffs make the belated assertion in their brief that one of Plaintiffs' founders has sought legal asylum in the United States.  Opp. at 12.  Whether mounted in the Amended Complaint or Plaintiffs' Opposition, though, such assertions are inapposite to a RICO inquiry.  These assertions do not establish a nexus to the United States, much less have any bearing on whether Plaintiffs have RICO standing, whether the alleged scheme meets the standard of open- or closed-ended continuity, whether an enterprise existed, or whether Plaintiffs state any claim.

Plaintiffs' improper move to sprinkle their Opposition with new allegations confirms one point:  there is no reason to allow Plaintiffs to amend again as they have not been constrained by the current Amended Complaint in the allegations they have lobbed.  If allowed to amend again, Plaintiffs would add nothing new.  As we have stated before, this matter has no business in an American court and it is disappointing that officers of this Court would utilize this forum to make such spurious allegations.

---

[2] *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting claim raised for the first time in plaintiff's brief in opposition to the defendant's motion to dismiss); *Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y. 1999) (stating that "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss" (internal quotation marks omitted)).

**ARGUMENT**

## I.   PLAINTIFFS DO NOT PLEAD FACTS WHICH, IF TRUE, WOULD ESTABLISH SUFFICIENT TIES TO THE UNITED STATES.

Plaintiffs agree that a presumption against extraterritoriality applies to the underlying RICO predicates they advance.[3]  *See* Opp. at 15–23.  While they spill considerable ink arguing that not *all* of the relevant conduct must occur within the United States, *id.*, the Baker Defendants have never contended otherwise.  Plaintiffs' claims fail because they do not allege that *any*, much less a substantial portion, of the relevant conduct occurred within the United States.

Plaintiffs cite *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 245 (S.D.N.Y. 2012), for the proposition that to establish domestic conduct, a court should consider:  (1) the place of the genesis and operation of the alleged scheme; (2) whether the scheme involved citizens or corporations from the United States as any of the parties; and (3) whether acts in furtherance of the alleged scheme were committed within the United States.  Plaintiffs fail each prong of the *Chevron* test they set for themselves.  First, while Plaintiffs undoubtedly allege that the U.S. Defendants "hatched," "directed," or "orchestrated" the scheme from the United States, Am. Compl. ¶¶ 2, 5, 99, they do not allege any facts, which, if proven, support those conclusory allegations.  Plaintiffs fail to provide any support for the proposition that such conclusory allegations can satisfy *Twombly*.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007).

Second, Plaintiffs do not allege the involvement of, or any action taken by, a single individual partner or employee of Baker U.S.  The most they say is that their analysis of the thumb drive shows that documents were "possibly drafted on a computers owned by Baker &

---

[3] Plaintiffs claim that an FCPA violation can form a part of a predicate act of a Travel Act violation.  *See* Opp. at 19–20.  True enough.  However, because the Travel Act does not apply to extra-territorial conduct, Plaintiffs must still allege a nexus to the United States with respect to their reliance on the FCPA as a basis for relying upon the Travel Act as a predicate act.

McKenzie in the United States," without specifying anything more.  Am. Compl. ¶ 86; *see id.*
¶ 18.  Even if this were true, that fact alone does not mean the conduct occurred in the United
States, much less establish the substantial nexus to the United States in furtherance of a scheme
in Mexico required by RICO.  There are many banal reasons why a computer, or legal pad, or
any other object owned by Baker U.S. could have been sent for use in Mexico.  The Second
Circuit's decision in *Norex Petroleum Ltd. v. Access Industries, Inc.* speaks directly to this issue:
"[S]imply alleging that some domestic conduct occurred cannot support a claim of domestic
application.  It is a rare case of prohibited extraterritorial application that lacks *all* contact with
the territory of the United States."  631 F.3d 29, 33 (2d Cir. 2010) (per curiam) (alteration and
internal quotation marks omitted).

Third, Plaintiffs do not allege a single act committed within the United States by any
Baker Defendant.  The Amended Complaint is devoid of any particularized allegation of conduct
by the Baker Defendants within the United States.  That absence speaks volumes.  When the
most particularized allegation Plaintiffs can muster is that a document was "possibly drafted on
computers," Am. Compl. ¶  86; *see* ¶ 18, without even stating whether the computer was owned
by a U.S. entity, the speculative nature of their claims becomes obvious.

*Chevron* stands in stark contrast.  There, a large international conspiracy had extensive
ties to both the United States and Ecuador, and this Court had a significant interest in hearing
that dispute due to the significant harm that Chevron, an American corporation, had endured as a
result of the scheme.  *See Chevron*, 871 F. Supp. 2d at 245–46.  As part of the alleged scheme,
the defendants hired American counsel who worked principally in New York, took repeated
advantage of New York law and New York courts, transferred funds to support the scheme
through New York banks, originated and carried out a host of specifically-identified activities in

support of the scheme in New York, and, *inter alia*, arranged for New York state and local officials to exert pressure on Plaintiff.  *See id.* at 236–39.  None of those factors are present here.

Plaintiffs also rely heavily on *Reich v. Lopez*, 38 F. Supp. 3d 436 (S.D.N.Y. 2014).  In *Reich*, the plaintiff was a former U.S. Ambassador to Venezuela whose United States consulting company suffered harm as a result of bribes and other alleged racketeering activity engaged in by a Barbados corporation.  *See id.* at 444–45.  This Court declined to dismiss because the complaint had well-pleaded allegations suggesting that the defendants, among other things, committed bribes, made specific telephone calls, and entered into banking transactions directed from the United States to further their scheme.  *Id.* at 448.  Plaintiffs allege nothing of the sort here and cannot credibly claim that the allegations in that case are analogous to the one at bar.

Plaintiffs also fail to address the cases the Baker Defendants cited in support of dismissal. *See* Baker Mot. at 20–22.  Plaintiffs do not meaningfully distinguish, for example, *Petroleos Mexicanos v. SK Engineering & Construction Co.*, 572 F. App'x 60, 61 (2d Cir. 2014). Indisputably, this case alleges far fewer contacts with the United States than does *Petroleos*, which was dismissed even though plaintiffs there alleged that both financing and payments of the alleged scheme were directed from the United States.  *Id.*  If such allegations are insufficient to establish a legally-cognizable nexus to the United States, the allegation that a proposed order may have been drafted on a computer that at some point in time belonged to an American entity hardly suffices.[4]

---

[4] It bears noting that even if the proposed order had been drafted in the United States (which is not alleged anywhere in the Complaint), Mexican law does not prohibit providing such draft orders to judges.  *See* Baker Mot. at 17 (citing Article 344 of Mexico's Federal Code of Civil Procedure).  Plaintiffs conspicuously do not rebut that point in their opposition.

As the following table demonstrates,[5] a court will find a legally-cognizable nexus only when it can identify a multitude of indicators:

| Case | Engaged in Banking and/or Financial Transactions in the U.S. | Executed Contracts in the U.S. and/or with U.S. Entities | Took Advantage of U.S. Agencies, Courts, Officials | Utilized Third Parties Located in the U.S. | Traveled to/from the U.S. | Attended Meetings in the U.S. | Directed Communications to/from the U.S. | Engaged in Conduct with Effects Felt in the U.S. | Whether Nexus Found |
|---|---|---|---|---|---|---|---|---|---|
| *European Cmty.* | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes |
| *Chevron* | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes |
| *Reich* | Yes | Yes | Yes | Yes | Yes | No | No | No | Yes |
| *Petroleos* | Yes | No | No | No | No | No | No | No | No |
| *Norex* | No | No | No | No | No | No | No | No | No |
| Present Case | No | No | No | No | No | No | No | No | No |

Plaintiffs have not alleged a sufficient nexus to the United States. Their claims must be dismissed.

## II.  PLAINTIFFS DO NOT HAVE STANDING.

Plaintiffs acknowledge their burden to prove a "direct relationship between the RICO Defendants' alleged actions and the harm Plaintiffs suffered."  Opp. at 24.  As the Second Circuit explained, standing under RICO requires proof of "causation of the injury by the violation" and "injury to business or property."  *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767 (2d Cir. 1994) (internal quotation marks omitted).  Plaintiffs cannot meet either prong of this test.

---

[5] The table uses the following cases as examples: *Petroleos Mexicanos v. SK Engineering & Construction Co.*, 572 F. App'x 60 (2d Cir. 2014), *European Community v. RJR Nabisco, Inc.*, 764 F.3d 129 (2d Cir. 2014), *Norex Petroleum Ltd. v. Access Industries, Inc.*, 631 F.3d 29 (2d Cir. 2010) (per curiam), *Reich v. Lopez*, 38 F. Supp. 3d 436 (S.D.N.Y. 2014), and *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229 (S.D.N.Y. 2012).

## A.     Plaintiffs Cannot Prove Proximate Causation.

The test for proximate cause under RICO requires a direct link between the injury asserted and the injurious conduct alleged.  *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 265–68 (1992).  Plaintiffs admit as much, noting that "the key factor to consider [in assessing proximate cause] is the direct relationship between the RICO Defendants' alleged actions and the harm Plaintiffs suffered."  Opp. at 24 (citing *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010)).  As the principal case upon which Plaintiffs rely makes plain, causal links that are "'too remote,' 'purely contingent,' or 'indirec[t]' [are] insufficient" under RICO.  *See Hemi Grp.*, 559 U.S. at 9 (first alteration in original) (quoting *Holmes*, 503 U.S. at 271, 274).

In arguing that they meet the proximate cause standard, Plaintiffs state that the allegedly injurious conduct involved:  "(1) Defendants brib[ing] Judge Azar, [and] (2) Judge Azar coerc[ing] the judges on the [State] Court of Appeals," which resulted in an alleged injury of "the [State] Court of Appeals rul[ing] in Yahoo's favor."[6]  Opp. at 24.  Plaintiffs contend that "the [state appellate] decision was a foregone conclusion *due to the RICO Defendants' illegal acts*."  *Id.* (emphasis added).  In advancing this theory of causation, Plaintiffs do not challenge the legal validity of the State Appellate Court Decision reversing the Trial Court Decision.  Instead, they claim that the legal correctness of the Appellate Court Decision is "irrelevant" and that any focus on its legal validity constitutes an attempt to "obfuscate" the issues in this proceeding.  Opp. at 4, 24.  That is a perplexing contention, to say the least.  The crux of Plaintiffs' Original and Amended Complaints is that a legitimate trial court judgment was overturned because an alleged illegitimate influence on a state appellate court resulted in an

---

[6] Plaintiffs frame the injurious conduct and injury similarly in their Preliminary Statement, arguing that the RICO violation constituted a conspiracy "to corrupt a judicial proceeding in order to overturn an unfavorable judgment."  Opp. at 1.

illegitimate decision.  If Plaintiffs cannot allege that the State Appellate Court Decision is incorrect as a matter of law—which they do not—then they cannot carry their causation burden. Regardless of the Baker Defendants' alleged actions, the correct application of Mexican law was an intervening act that caused the Trial Court Decision entered by Mr. Segu to be reversed.

Plaintiffs also completely ignore the adverse outcome of the independent federal *amparo* proceeding, which upheld the State Appellate Court Decision.  Plaintiffs simply claim that the federal court proceedings "are not relevant to the inquiry."  Opp. at 14 n.2.  Even assuming that the state courts were tainted by the alleged scheme, the role of the federal courts in reversing the initial decision constitutes a second intervening act that breaks proximate causation.  Plaintiffs do not allege that the federal courts were influenced in anyway by Judge Azar or anyone else.  Nor do Plaintiffs allege that the federal court decisions were incorrect as a matter of law.

No fewer than six appellate judges of Mexico's state and federal courts have disagreed with Mr. Segu's Trial Court Decision.  The President of the Mexican Supreme Court has rejected Plaintiffs' petition for review—a decision that is itself now under review.  The inescapable reality that Plaintiffs refuse to acknowledge is that multiple courts from a state appellate court to an intermediate federal appellate court to the Mexican Supreme Court have all rejected the unprecedented $2.7 billion decision by a temporary judge during a fifteen-day judicial vacancy. The only plausible inference—and one left undisputed by Plaintiffs—is that the adverse outcomes of these state and federal appellate decisions were the legally correct ones under Mexican law.  Plaintiffs have failed to raise any credible allegations to support the view that Mr. Segu's opinion was anything other than a rushed, legally flawed decision that the Mexican state and federal appeals courts have since appropriately corrected.

### B.      Plaintiffs Cannot Establish an Injury to a Recognized Property Interest.

Plaintiffs claim that absent the alleged scheme, "Yahoo would have been liable for the total judgment issued by Judge Segu." Opp. at 26. To the contrary, absent the alleged scheme, Plaintiffs would have had a non-final judgment subject to reversal by the Mexican state and federal appellate courts. As the Baker Defendants established, without any rebuttal by Plaintiffs, such a judgment does not constitute a property-interest for purposes of establishing RICO standing. *See* Baker Mot. at 28–29. Even now there is no finality, as Plaintiffs confirm that their case remains pending before the Mexican Supreme Court. *See* Opp. at 12, 40. The very fact that their claims are still technically viable before the Mexican courts requires dismissal of this case, as it is a matter of black letter law that a plaintiff does not have a property interest in a non-final judgment. *See* Baker Mot. at 28–29.

### III.    PLAINTIFFS DO NOT ALLEGE ANY PATTERN OF RACKETEERING ACTIVITY OR A RICO ENTERPRISE.

### A.      Plaintiffs Do Not Allege a Pattern of Racketeering Activity.

Plaintiffs agree that to allege a "pattern of racketeering activity" under RICO they must show that the alleged racketeering activity "'amount[s] to or pose[s] a threat of *continued criminal activity*.'" Opp. at 31 (alterations in original) (quoting *H.J. Inc v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Such "continued criminal activity" can either be "closed-ended" or "open-ended" continuity. *See id.* Neither is alleged here.

Plaintiffs cannot meet the continuity requirements of RICO because, by their own admissions, the centerpiece of the alleged scheme is Judge Azar. After Defendants allegedly failed to bribe or extort Mr. Segu to achieve their ends, Plaintiffs argue that Defendants bribed Judge Azar and that "Judge Azar, then acting as the RICO Defendants' agent, continued the pattern of racketeering against the appellate judges." Opp. at 31. Throughout their brief,

Plaintiffs consistently refer to Judge Azar as Defendants' "agent,"[7] and claim that, because of Azar's actions, "racketeering activities . . . are still continuing through this day."  Opp. at 31; *see id.* at 23 (Judge Azar has "continued to improperly influence the appellate decision and intimidate and threaten all those who posed additional roadblocks" (citing Am. Compl. ¶¶ 96–122)).

The insurmountable problem for Plaintiffs—and the one that, tellingly, they fail to address—is that Judge Azar has no power over the federal courts in Mexico.  *See* Baker Mot. at 11.  Plaintiffs admit that Judge Azar serves only as the "President of Mexico's District Federal Superior Courts," Opp. at 1, 5, which are Mexico City's local state courts.  These courts, while stationed in Mexico's Federal District, are state-level courts akin to the District of Columbia courts in Washington, D.C.  Thus, by Plaintiffs' own theory of the case, the scheme could not have continued beyond the State Court Appellate Decision and could not have impacted the Federal Court Appellate Decision.

Plaintiffs' arguments and allegations further confirm that Judge Azar's authority does not extend beyond the Mexico state courts.  For example, they argue that Judge Azar's "expansive, corrupt reach is clear from the experience of Judge Oca."  Opp. at 5; *see also id.* at 8.  However, Judge Oca, like Judge Azar, was a judge of the Mexico City Superior Courts, so it is not clear how Judge Oca's hearsay allegations, even taken as true, could expand the conspiracy beyond Mexico's state courts.  Plaintiffs refer to Judge Azar's influence over "key Mexican judicial officials," Am. Compl. ¶ 140, and his intimidation and "continued threats against members of the Mexican judiciary," Opp. at 31–32.  However, none of the alleged threats or intimidation refers

---

[7] *See also* Opp. at 3 ("The RICO Defendants . . . set out to corrupt the appellate process through their agent, Judge Azar."); *id.* at 20–21 ("[A]fter Judge Segu refused to be corrupted by the RICO Defendants, they violated the Travel Act and the FCPA by bribing Judge Azar and using him as an agent to extort other members of the Mexican judiciary." (citing Am. Compl. ¶ 140)); Opp. at 30 ("[T]he RICO Defendants were only able to terminate Plaintiffs' property interest through the use [sic] fear of retaliation or other forms of recrimination by their agent, Judge Azar.").

to judges or members of Mexico's *federal* judiciary, and there is no plausible reason to believe

that a state court judge would have such power over judges in the federal judiciary.[8]

   ***Closed-Ended Continuity***.   Because Judge Azar's authority does not extend beyond

Mexico City's state-level courts, the alleged pattern of racketeering cannot meet the standard for

closed-ended continuity.   At most, the scheme began in November 2012, when Defendants and

Judge Azar allegedly pressured Mr. Segu to rule in Yahoo's favor, *see* Am. Compl. ¶¶ 80–86,

and it ended in May 2013, when the State Appellate Court judgment was issued.   *See* Baker Mot.

at 9 & Ex. 2.   A scheme that spans a mere six months cannot possibly constitute "continued

criminal activity" under RICO.   Plaintiffs concede that "long-term racketeering activity will not

be considered for the purpose of close-ended continuity if it does not continue for a minimum of

two years."   Opp. at 32 (citing *DeFalco v. Bernas*, 244 F.3d 286, 322 (2d Cir. 2001)).[9]

Plaintiffs' only basis for establishing the requisite continuity is to allege that there were

"continued threats against members of the Mexican judiciary."   Opp. at 32.   The Amended

Complaint does not recount any specific threats or racketeering activity that occurred since the

date of the State Appellate Court Decision—nothing about who was supposedly threatened, how

they were threatened, or when they were threatened.   Plaintiffs' bare allegations that the scheme

---

[8] The highest-level officials who were supposedly influenced by Judge Azar were Judge Monica Venegas and a clerk, who both worked in the state-level appellate court in Mexico City.   All remaining allegations pertain to Judge Azar's alleged attempts to intimidate or influence Mr. Segu and other employees of the Mexico City superior courts.   *See id.* (citing Am. Compl. ¶¶ 14–15, 17, 20, 78–79, 95, 98, 103, 111–12, 121); *see also* Opp. at 3.

[9] December 2013 is the last date of any specific allegation that is even arguably connected to the scheme.   *See* Am. Compl. ¶ 113.   This allegation relates to depositions that Judge Azar ordered to be taken at the Mexico City Superior Court seven months after the State Appellate Court's Decision. Even if the length of the scheme were extended to this date, it would still span a mere 13 months—far short of the two-year minimum needed for closed-ended continuity.   Notably, no specific allegations of racketeering activity are highlighted beyond this date.   Indeed, the year 2014 never appears in the Amended Complaint, and the year 2015 only appears in reference to the federal *amparo* decision and subsequent appeal to the Mexican Supreme Court.

"continues to this day" are wholly unavailing.  Am. Compl. ¶ 134; Baker Mot. at 30–31 & n.29.

Such a generic assertion fails to chin the bar set by *Twombly*.

     ***Open-Ended Continuity.***  The alleged scheme does not meet the requirements of open-ended continuity for similar reasons.  Plaintiffs recognize that, to show open-ended continuity, there must be a "'threat of continuing criminal activity beyond the period during which the predicate acts were performed.'"  Opp. at 32 (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242–43 (2d Cir. 1999)).  Here, as explained above, the threat of criminal activity associated with the alleged scheme ended after the state court appellate judgment issued in 2013.  Despite allegations that the scheme "continues to this day," Plaintiffs fail to provide any specifics of how the scheme could possibly continue once the Mexican Supreme Court finally disposes of Plaintiffs' last, desperate appeal.

    **B.**    **Plaintiffs Do Not Allege a RICO Enterprise.**

     The basis of Plaintiffs' contention that they have stated a RICO enterprise is that "[i]t is a matter of fact that all of the RICO Defendants are legal entities with an attorney-client relationship in connection with the Mexican litigation at issue in this case."  Opp. at 33.  Plaintiffs fail to address, however, how that relationship meets the relevant standard, which requires that Plaintiffs allege that the enterprise acted as an "overall functional unit."  Baker Mot. at 32 (citing cases).  Plaintiffs do not allege the hierarchy of the enterprise, how it organized itself, how it is that the members interacted among themselves to further a common interest, or even the individual participants involved.   The absence of these allegations is fatal to their ability to maintain a viable RICO claim.

IV.    **PLAINTIFFS DO NOT ALLEGE THE ELEMENTS OF ANY PREDICATE ACT OR CLAIM UNDER NEW YORK LAW.**

Plaintiffs' failure to meet basic pleading standards independently warrants dismissal. Their reliance on group pleading is so pervasive that it reveals the utter fiction this case is premised upon.  Plaintiffs fail to allege any individual details about the hierarchy of the alleged RICO enterprise, much less to provide any specificity about individuals and their actions.  The best example comes directly from the Amended Complaint:

> While executives and legal counsel from Yahoo-US and attorneys from Baker & McKenzie orchestrated the scheme to coerce, bribe, and ghostwrite, from the United States, including through mails and wires, they also traveled to and from the United States and Mexico to further the conspiracy.

Am. Compl. ¶ 99.  This allegation tells the reader no details about the "who, what, when, where, or why."  And one can scour the Amended Complaint for days and never find any particularized information expanding on this allegation.  By failing to link Defendants to any specific fraudulent act, Plaintiffs violate the prohibition against group pleading.

Plaintiffs tacitly acknowledge their shortcoming by seeking to invoke the "insider" exception articulated in *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1249 (2d Cir. 1987).  Opp. at 34.  That case does not excuse Plaintiffs' abject pleading failures.  In *DiVittorio*, the Second Circuit upheld the district court's dismissal of the complaint, in relevant part, because the plaintiffs had "pleaded against the defendants generally, with little or no specification as to individual roles."  822 F.2d at 1247.  If that sounds familiar, it is because that is the exact situation repeated in Plaintiffs' Amended Complaint.  The *DiVittorio* court discussed the insider exception but expressly declined to treat the defendants as insiders because of the lack of particularized allegations.  *Id.*  Fraud allegations, the court wrote, "ought to specify the time, place, speaker, and content of the alleged misrepresentations," regardless of the insider

exception. *Id.* Here, too, there is no allegation "in the amended complaint . . . sufficient to describe any of them as insiders or affiliates, and there is no allegation linking any of them in any specific way to any fraudulent misrepresentation or omission." *Id.* at 1249.

**A.      Plaintiffs' Allegations of Violation of RICO Predicate Acts Are Conclusory.**

Each one of Plaintiffs' claims fails because it lacks the requisite particularity.

*Mail and Wire Fraud*. Plaintiffs have not alleged a single specific use of the mails or wires in connection with the alleged scheme. Instead, Plaintiffs continue to assert that mails and wires were used, without any explanation or specificity whatsoever. *See* Am. Compl. ¶ 142; Opp. at 27–28. Atop their speculations about fraud, they surmise that the Baker Defendants used modern means of communication common to virtually any business enterprise. It is perfectly "conceivable," *Twombly*, 550 U.S. at 570, that individuals would use "regular mail, electronic mail, faxes, wire transfers, and the telephone to communicate," Am. Compl. ¶ 142; Opp. at 27. The law demands more than such a threadbare assertion. Such allegations standing alone cannot support the contention that the devices served as the instrumentalities of a purported conspiracy, without any particular indication thereof. *See* Baker Mot. at 34–35.

*The Hobbs Act*. Plaintiffs do not provide any support for the proposition that they had a property interest in a non-final judgment issued by Mr. Segu. Nor do they explain how the alleged conduct has any effect on interstate commerce, which is an independent basis upon which to dismiss the Hobbs Act as a predicate act. *See* Opp. at 29–30. Plaintiffs' Opposition does nothing more than state in a conclusory fashion that they "had a property interest in Judge Segu's judgment." Opp. at 29. But the property at issue under the Hobbs Act must be *obtainable*. *Sekhar v. United States*, 133 S. Ct. 2720, 2723 (2013). Here, Plaintiffs essentially ask this Court to engage in counterfactual gymnastics about a non-final judgment that was rejected by the state reviewing court and an independent federal *amparo* court. "[T]he Hobbs

Act was enacted to address something significantly more violent and sinister" than simply a reviewing court's reversal of an unfavorable legal outcome. *Kimm v. Chang Hoon Lee*, No. 04 Civ. 5724 (HB), 2005 WL 89386, at *6 (S.D.N.Y. Jan. 13, 2005), *aff'd sub nom. Kimm v. Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14 (2d Cir. 2006). Accordingly, Plaintiffs' Hobbs Act allegations do not constitute a RICO predicate act.

*The Travel Act*. Plaintiffs do not address the Baker Defendants' arguments that they failed to allege the elements of a Travel Act violation. This is a sufficient basis to dismiss the Travel Act as a predicate act. *See* Opp. at 29–30; Baker Mot. at 36. The Travel Act requires a showing that, in committing the alleged crimes, there was travel between states or the use of mail in the commission thereof. 18 U.S.C. § 1952(a), (b)(2). Yet Plaintiffs' Complaint, Amended Complaint, and Opposition do nothing more than allege that "RICO Defendants violated the Travel Act through their bribery and extortionate activity." Am. Compl. ¶ 140; Opp. at 30. Plaintiffs claim that this is a "textbook violation" of the Travel Act, without actually detailing any specific travel or interstate movement. Opp. at 30. Because the Amended Complaint "sets forth no facts showing that any facilities in interstate commerce were used in connection with [the alleged wrongful] act," the claim must be dismissed. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923(CSH), 1994 WL 88129, at *14 (S.D.N.Y. Mar. 15, 1994).

**B.      The RICO Conspiracy Claim Should Be Dismissed.**

Plaintiffs' RICO conspiracy allegations also fail to satisfy the basic pleading requirements of Section 1962(d) and Rule 8(a). First, conspiracy allegations cannot survive in the absence of a substantive RICO claim. *See, e.g.*, *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, No. 14-CV-121 (JPO), 2014 WL 6077247, at *11 (S.D.N.Y. Nov. 14, 2014) ("Because the complaint does not allege the existence of a RICO enterprise, the substantive RICO claim fails, and thus so does the RICO conspiracy claim."); *Westgate Fin. Corp. v.*

17

*Beinoni of N.Y. Inc.*, No. 10 Civ. 8102 (TPG), 2012 WL 219334, at *4 (S.D.N.Y. Jan. 25, 2012) ("Dismissal of plaintiff's substantive RICO claim . . . mandates dismissal of the conspiracy to commit RICO claim . . . ." (alterations in original) (internal quotation marks omitted)).

Plaintiffs have also failed to meet the pleading standard articulated in Section 1962(d). Not only have they "failed to state a substantive RICO claim," but they also "have made no additional allegations in pleading a RICO conspiracy claim that would establish a pattern of racketeering activity." *Aronov v. Mersini*, No. 14-cv-7998 (PKC), 2015 WL 1780164, at *7 (S.D.N.Y. Apr. 20, 2015). The Amended Complaint simply pleads, in conclusory fashion, that the RICO Defendants "were engaged in a conspiracy to commit the predicate acts." Am. Compl. ¶ 148. Plaintiffs' Opposition does nothing to illuminate that allegation. The claim should be dismissed because "nothing contained in the complaint invests either the action or inaction alleged with a plausible suggestion of conspiracy." *Twombly*, 550 U.S. at 566.

### C.      Plaintiffs' New York Law Claims Cannot Be Salvaged.

Plaintiffs cannot save their New York state claims for common law fraud and civil conspiracy. First, New York law does not apply to extra-territorial conduct. If the Court dismisses the RICO claims for lack of a nexus to the United States, it should also dismiss the New York law claims on the same basis. *See* Baker Mot. at 25–26.

Second, Plaintiffs' common law fraud claim falls far short of Rule 9(b)'s heightened requirements. Plaintiffs are required to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Rule 9(b) is intended to guard against 'improvident charges of wrongdoing.'" *Almazan v. Almazan*, No. 14-cv-311 (AJN), 2015 WL 500176, at *9 (S.D.N.Y. Feb. 4, 2015) (quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). Yet that is exactly the character of Plaintiffs' claims. There is no specific allegation of scienter in the Amended Complaint, much less the "strong inference of fraudulent intent" that Rule 9(b)

requires.  *Id.* (internal quotation marks omitted).  And as we have already established, there is

nothing more in the pleadings than conclusory allegations that "[t]he RICO Defendants . . .

engaged in malicious, willful, and fraudulent commission of wrongful acts."  Am. Compl. ¶ 161.

Plaintiffs' statement that they hope to have "stronger evidence once discovery commences" is a

tacit acknowledgment that their allegations are too weak to pass muster.  Opp. at 38.  Rule 9(b)

exists for a reason.  It does not tolerate fishing expeditions—particularly when the case would

require investigation into the inner workings of several levels of the Mexican judiciary and

involve the depositions of scores of Mexican judicial officials.  Here, "Plaintiffs' barebones

pleadings regarding [Defendants'] state of mind fall far short of what is required under Rule

9(b)'s heightened requirements."  *Almazan*, 2015 WL 500176, at *9.  The common law fraud

claim must be dismissed.

Third, Plaintiffs' civil conspiracy claim must also be dismissed because New York law

does not recognize a substantive tort of civil conspiracy.  "[T]he claim rises or falls with the

underlying tort."  Baker Mot. at 40 (citing *Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast

Int'l Holdings, Inc.*, 100 F. Supp. 2d 178, 187 (S.D.N.Y. 2000)).  Because Plaintiffs' underlying

claim is deficient, their conspiracy claim also fails.  Plaintiffs admit that they "have provided all

of the information in their possession possible regarding [the alleged conspiracy]."  Opp. at 39.

All they can do now is hope that "during discovery more information will quickly come to light."

*Id.*  Such a statement all but concedes that their claims do not rise "above the speculative level."

*Twombly*, 550 U.S. at 555.  Their insistence that something will turn up cannot be squared with

the federal rules or the Supreme Court's direction on pleading standards.  The civil conspiracy

claim must be dismissed.

## V.    LEAVE TO AMEND SHOULD BE DENIED AS FUTILE.

The Court should dismiss Plaintiffs' Amended Complaint with prejudice.  Plaintiffs have

told, and recast, their story repeatedly.  They filed their complaint many months ago.  They amended their complaint after reviewing Defendants' motions to dismiss.  In response to the present motions to dismiss the Amended Complaint (which raise the same arguments that originally were made when Defendants moved to dismiss Plaintiffs' initial Complaint), Plaintiffs have layered additional allegations into their Opposition even though they were not pleaded in the Amended Complaint.  Even with multiple opportunities to remedy their pleading infirmities, Plaintiffs could not do so.

Plaintiffs simply cannot plead around the multiple defects in the Amended Complaint. *See Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam) (affirming district court's denial of leave to amend, on futility grounds).  They admit that they "have provided all of their information in their possession possible regarding the RICO Defendants' conspiracy."  Opp. at 39.  There is nothing more that Plaintiffs can add that would change this analysis.  The fact that Plaintiffs have sprinkled new allegations not contained in the Amended Complaint throughout their brief confirms that, if given the opportunity to re-plead, they would have nothing relevant to add.  Plaintiffs should not be given another opportunity to perpetuate a legally baseless case that should never have been brought in the first place.  They should not be permitted to continue using this case as a vehicle to make more outrageous and publicity-seeking allegations cloaked in the immunity of court pleadings.

## CONCLUSION

For the foregoing reasons detailed herein and in the Baker Defendants' Joint Motion to Dismiss, the Court should dismiss Plaintiffs' Complaint in its entirety with prejudice.

Dated:  May 22, 2015                    Respectfully Submitted,


                                        WILLIAMS & CONNOLLY LLP


                                        By:      /s/ Ana C. Reyes
                                                 John K. Villa (*pro hac vice* )
                                                 Ryan T. Scarborough (*pro hac vice*)
                                                 Ana C. Reyes (*pro hac vice*)

                                        725 Twelfth Street, N.W.
                                        Washington, DC 20005
                                        Tel.: (202) 434-5000
                                        Fax: (202) 434-5029
                                        jvilla@wc.com
                                        rscarborough@wc.com
                                        areyes@wc.com

                                        *Attorneys for Defendant Baker & McKenzie LLP*

                                        CLAYMAN & ROSENBERG LLP


                                        By:      /s/ Charles E. Clayman
                                                 Charles E. Clayman
                                                 Isabelle A. Kirshner
                                                 Wayne E. Gosnell, Jr.

                                        305 Madison Avenue, Suite 1301
                                        New York, NY 10165
                                        Tel: (212) 922-1080
                                        Fax: (212) 949-8255
                                        clayman@clayro.com
                                        kirshner@clayro.com
                                        gosnell@clayro.com

                                        *Attorneys for Defendant Baker & McKenzie, S.C.*