UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____              │
│ DATE FILED: MAR 3 1 2016             │
└─────────────────────────────────────┘
```

Worldwide Directories, S.A. De C.V. & Ideas
Interactivas, S.A. De C.V.,

                              Plaintiffs,

              –v–

Yahoo! Inc., *et al.*,

                              Defendants.

14-cv-7349 (AJN)

MEMORANDUM
& ORDER

ALISON J. NATHAN, District Judge:

Plaintiffs are two interconnected Mexican companies who entered into a business relationship with Defendant Yahoo!, Inc.'s Mexican subsidiary. The fraying of that relationship produced a lawsuit in Mexico. Defendants' conduct in that litigation in turn begat this case. Plaintiffs allege that Defendants bribed a Mexican judge as part of a successful scheme to overturn an unfavorable $2.7 billion judgment in Mexican court. They therefore bring this claim for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"), conspiracy to violate RICO, *id.* § 1962(d), fraud, and civil conspiracy against Yahoo!, Inc., its Mexican subsidiary, and their lawyers. Two sets of Defendants (Yahoo and its lawyers) each move to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief could be granted. For the reasons discussed below, Defendants' motions to dismiss are granted.

## I.    Background

For the purpose of resolving Defendants' motions to dismiss, the Court accepts all well-pleaded facts in the complaint as true, and draws all reasonable inferences in Plaintiffs' favor.

*See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  The following account is therefore taken from Plaintiffs' factual allegations contained in the complaint.

### A.  The Parties and Their Relationship

Plaintiff Worldwide Directories, S.A. de C.V. ("Worldwide") is a Mexican corporation that serves as a holding company for a second Mexican corporation, Plaintiff Ideas Interactivas, S.A. De C.V. ("Interactivas").  Am. Compl. ¶¶ 27–28.  Defendants are Yahoo!, Inc. ("Yahoo US"), an American internet company; its Mexican subsidiary, Yahoo! De Mexico, SA de C.V. ("Yahoo Mexico;" collectively "Yahoo" or the "Yahoo Defendants"); American law firm Baker & McKenzie, LLP ("Baker US"); and its Mexico City office Baker & McKenzie S.C. ("Baker Mexico," collectively "Baker" or the "Baker Defendants").  *Id.* ¶¶ 29–30, 32–33.

Starting in 2002, Yahoo and Interactivas entered into a business relationship aimed first at producing online and physical telephone directories in Mexico, and later at providing telecommunications services in Mexico and abroad.  *Id.* ¶¶ 51, 53.  Over the next three years, Yahoo US and Yahoo Mexico entered into a series of agreements with Interactivas and Worldwide towards these ends.  *Id.* ¶¶ 52–54, 58.  Plaintiffs' relationship with Yahoo began to sour, however, as a result of Yahoo's 2003 acquisition of a competitor to Interactivas (which reduced Yahoo's need for Plaintiffs' services).  *Id.* ¶ 59.  Yahoo US caused its regional offices and affiliates to sever ties with Plaintiffs and to prevent new ones from forming.  *Id.* ¶¶ 60–61.

### B.  The Mexican Litigation

Plaintiffs filed suit against Yahoo US, Yahoo Mexico and other subsidiaries in the 49th Civil Court of Mexico on November 16, 2011, for breach of contract, breach of promise, and lost profits.  *Id.* ¶ 62.  The suit was originally before Judge Jorge Luis Ramirez Sanchez.  *Id.* ¶ 65.  Around November 15, 2012, while Plaintiffs' suit was pending, Judge Ramirez Sanchez was transferred to another court.  *Id.* ¶ 74.  While Judge Ramirez Sanchez's seat remained vacant, his responsibilities devolved (as per Mexican law) onto his *secretario de acuertos*, Juan Francisco

Garcia Segu. *Id.* A *secretario de acuertos* is a licensed attorney employed by the court who oversees discovery and conducts evidentiary hearings. *Id.* ¶¶ 67, 70.

Plaintiffs allege that Defendants sought to obtain a favorable verdict in the Mexican litigation through bribery. On November 26, 2012, attorneys from Baker Mexico, acting on behalf of Yahoo, met with Judge Edgar Elias Azar, President of the Federal District Superior Courts in Mexico. *Id.* ¶¶ 35, 77. *Ex parte* meetings with judges are permitted by Mexican law and legal ethics. *Id.* ¶ 87. But Plaintiffs allege that Baker Mexico offered Judge Azar money to ensure that Segu would rule in Yahoo's favor. *Id.* ¶ 77. After meeting with Baker Mexico, Judge Azar met with Segu. *Id.* ¶ 80. At this meeting, Judge Azar instructed Segu to rule in favor of Yahoo. *Id.* He told Segu that Yahoo "could not lose," and that "international scandal" would result if it did. *Id.* ¶¶ 80, 83. Judge Azar instructed Segu that Yahoo's attorneys would provide a draft of the decision Segu was to enter, and that Segu should submit the final draft back to Judge Azar before handing down the ruling. *Id.* ¶¶ 81–82. Baker Mexico later delivered to Segu a USB stick containing two draft opinions favorable to Yahoo and Baker, respectively. *Id.* ¶¶ 10, 85. According to computer forensic analysis of the files, the documents "were revised and possibly drafted on computers owned by Baker & McKenzie in the United States." *Id.* ¶ 86.

Despite the efforts Plaintiffs allege, however, Defendants were unable to influence Segu. Segu issued his ruling in the Mexican lawsuit on November 29, 2012. *Id.* ¶ 93. He found against Yahoo and awarded the Plaintiffs $2.7 billion in damages. *Id.*

Having lost its case before Segu, Yahoo turned its attention to the appeals process in the Mexican court system. On November 30, 2012, Plaintiffs' Mexican appellate lawyer, Luis Jesus Bernardo Guitierrez, met with Judge Azar to discuss a possible appeal by Yahoo. *Id.* ¶ 101. Judge Azar told Guitierrez that "You've already been defeated, the other side [Yahoo] has already been here. Don't get involved . . . there are too many zeros involved. If you want to fight this at the Federal level . . . I wish you good luck, but in my Court you are not going to win." *Id.* ¶ 102 (alterations in original). Guitierrez observed Judge Azar meeting with Yahoo's lawyers on December 3, 2012. *Id.* Throughout late 2012 and early 2013, Yahoo downplayed its

liability risk from the lawsuit to investors, shareholders, and the SEC. *Id.* ¶¶ 21–22.

Plaintiffs allege that Judge Azar interfered with the appellate proceedings to secure a reversal of Segu's verdict. Yahoo Mexico appealed the judgment to the Third Appellate Court on December 12, 2012, and Yahoo US followed suit the next day. *Id.* ¶ 103. Judge Azar ordered the case file for the appeal brought to his house by a court employee. *Id.* ¶ 108. In April 2013, Judge Azar met with Judge Monica Venegas, a member of the three-judge panel scheduled to hear Yahoo's appeal. *Id.* ¶ 110. The complaint alleges that Judge Azar told Judge Venegas to invalidate Segu's decision. *Id.* ¶ 111. It further alleges that Judge Azar met with Judge Venegas on several additional occasions to push for a reversal of Segu's decision. *Id.* Access to the case file was, unusually, restricted to Judge Venegas and those she approved. *Id.* ¶ 114. The Third Appellate Court ultimately reversed Segu in a ruling on May 15, 2013, that reduced Plaintiffs' damages to $172,500. *Id.* ¶ 7, 116; Reyes Decl. Ex. 2-A, at 1.

Segu suffered retaliation both during this period and subsequently. *Id.* ¶ 95. According to the complaint, shortly after his initial opinion was published, two Yahoo attorneys met with Segu and threatened him for disobeying Judge Azar. *Id.* ¶ 94. In mid-January 2013, with the appeal pending, a Yahoo lawyer harassed Segu about the Yahoo verdict in open court. *Id.* ¶ 106. A few days later, on January 17, 2013, Yahoo filed a disciplinary complaint against Segu for the decision he rendered in its case. *Id.* Segu ultimately fled to the United States for a time, and has been in hiding since his return to Mexico. *Id.* ¶¶ 17, 95.

After suffering defeat in the appeals court, Plaintiffs filed a collateral attack on the appellate decision—called an *amparo* challenge—in the 14th Federal Civil Tribunal of the First Circuit in Mexico City. *Id.* ¶ 117. Although Plaintiffs obtained a draft version of the Tribunal's opinion on the *amparo* challenge that ruled for them, the version of the decision that was ultimately handed down on January 14, 2015, was in favor of Yahoo. *Id.* ¶¶ 118–19. Plaintiffs subsequently appealed the denial of their *amparo* challenge to the Mexican Supreme Court. *Id.* ¶ 120. The Mexican Supreme Court denied Plaintiffs' appeal, as well as their petition for reconsideration of the denial. *See* Dkt. No. 80. In the meantime, Plaintiff Worldwide founder

Carlos Alberto Bazan Canabal fled Mexico for the United States out of concern for his liberty and safety. Am. Compl. ¶ 121.

Plaintiffs filed this lawsuit on September 10, 2014, asserting claims for violation of RICO, 18 U.S.C. § 1962(c) and conspiracy to violate RICO, *id.* § 1962(d), as well as state law fraud and civil conspiracy claims. On January 21, 2015, Defendants moved to dismiss the complaint. Plaintiffs filed an amended complaint on February 27, 2015, pursuant to Rule 3.F of the Court's Individual Practices in Civil Cases. Defendants moved to dismiss the amended complaint on March 31, 2015.

## II.    Legal Standard

When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the complaint will survive the motion to dismiss so long as it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Regardless of the level of factual detail provided, if "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," then the Court will dismiss the case. *Twombly*, 550 U.S. at 558.

A court evaluating a motion under Rule 12(b)(6) must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks omitted). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The Court may "consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or

5

known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Although pleading most claims requires only that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), claims of fraud must also meet the heightened pleading requirement of Rule 9(b). Specifically, a complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). In addition to those elements that must be pleaded with particularity, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## III.   Civil RICO Claim

Plaintiffs allege that they have been injured by Defendants' violation of RICO, 18 U.S.C. § 1962(c), and conspiracy to violate RICO, *id.* § 1962(d). The gravamen of this claim is that Defendants, Judge Azar, and others worked together to defeat Plaintiffs' Mexican lawsuit through a pattern of racketeering activity. Although the allegations in the complaint—taken as true, as they must be at this stage—describe serious wrongdoing, the Court concludes for the reasons below that Plaintiffs have failed to plausibly allege a violation of RICO against any Defendant in this case.

### A. Elements of a RICO Claim

Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." In order to establish a civil RICO claim, a plaintiff must show:

(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962. To

6

establish a violation of § 1962(c), in turn, a plaintiff must show that a person engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.

*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (citation, footnote, and internal quotation marks omitted). A RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The statute defines "racketeering activity" through a long list of criminal offenses in turn defined by state and federal law. *See id.* § 1961(1). That list includes five offenses alleged in the complaint: extortion under the Hobbs Act, 18 U.S.C. § 1951, "extortion . . . chargeable under State law and punishable by imprisonment for more than one year," mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, and violation of the Travel Act, 18 U.S.C. § 1952. *Id.*

Demonstrating a pattern of racketeering activity "requires at least two acts of racketeering activity" (often called "RICO predicates," or simply "predicate acts") committed within ten years of each other. 18 U.S.C. § 1961(5). These acts must be related and "amount to or pose a threat of continued criminal activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) (quoting *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). The latter requirement, called continuity, can be established in one of two ways: closed-ended continuity (a pattern of racketeering over an extended period of time), or open-ended continuity (a pattern of racketeering activity that threatens to extend into the future). *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004). Each element of a RICO violation, including a pattern of racketeering activity, must be plausibly alleged as to each defendant rather than simply to the enterprise as a whole. *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001).

### B. Plaintiffs Fail to Plausibly Allege Yahoo's Involvement in the Conduct of the RICO Enterprise

The Yahoo Defendants argue that the RICO claim against them must be dismissed because the complaint fails to plausibly allege that they engaged in the "conduct" of a RICO enterprise. *Cruz*, 720 F.3d at 120. The Court agrees. A defendant conducts a RICO enterprise

7

within the meaning of the statute if it "participate[s] in the operation or management of the enterprise itself" and "play[s] *some* part in directing the enterprise's affairs." *Satinwood*, 385 F.3d at 176 (brackets and internal quotation marks omitted).  As explained below, Plaintiffs have not pleaded facts from which the Court can reasonably infer that either Yahoo Defendant participated in the operation or management of a RICO enterprise.

The enterprise alleged in the complaint is an informal collaboration (an "associat[ion] in fact," 18 U.S.C. § 1961(4)) between the Yahoo Defendants, the Baker Defendants, and several Mexican non-party co-conspirators, most notably Judge Azar.  Am. Compl. ¶ 133.  Plaintiffs claim that the enterprise engaged in a pattern of racketeering activity aimed initially at obtaining a favorable ruling from Segu, and then, when that failed, at overturning Segu's unfavorable ruling at the appellate level. *Id.* ¶¶ 137–38.  This scheme included bribing Judge Azar and possibly unknown others. *Id.*

The problem, however, is that Plaintiffs' allegations regarding Yahoo's participation in this enterprise fail to meet the plausibility standard and cannot survive a motion to dismiss. Many of the complaint's allegations ascribe actions to all Defendants as an undifferentiated group, without identifying any role for the Yahoo Defendants in particular. *See, e.g.*, Am. Compl. ¶ 141 ("The RICO Defendants violated the Hobbs Act through their bribery and extortionate activity."); *see also id.* ¶¶ 133–43.  Such generalizations do not help Plaintiffs plead a claim against Yahoo because each element of a RICO violation must be plausibly alleged "as to each individual defendant." *DeFalco*, 244 F.3d at 306.  Other paragraphs simply assert the involvement of Yahoo US or Yahoo Mexico in a conclusory manner. *See, e.g.*, Am. Compl. ¶ 122 ("As a result of these predicate acts . . . all at the direction and control of Yahoo-US in the United States . . . the RICO Defendants violated civil RICO and caused substantial damage to Plaintiffs."); *see also id.* ¶¶ 10, 34, 99, 106.  Such conclusory representations of Yahoo's involvement are "not entitled to be assumed true," and are insufficient to "plausibly suggest an entitlement to relief." *See Iqbal*, 556 U.S. at 681.

Those portions of the complaint that do provide significant factual allegations about the actions of the Yahoo Defendants concern their business relationship with Plaintiffs prior to the Mexican lawsuit, Am. Compl. ¶¶ 40–61, Yahoo US's grant of power of attorney to Mexican lawyers for purposes of the Mexican lawsuit, *id.* ¶¶ 62–63, and Yahoo US's alleged misrepresentations to investors, shareholders, and regulators about the potential liability it faced from the Mexican lawsuit, *id.* ¶¶ 4, 21–22, 123–29. Neither set of facts is the basis for any racketeering act alleged in the complaint, nor do they permit an inference that Yahoo played a role in the RICO enterprise. Plaintiffs allege generally (based on the past experience of one of Plaintiffs' officers who is a former Yahoo employee) that Yahoo US tightly controls Yahoo Mexico and previously took a fairly active role in the company's Mexican legal affairs. *Id.* ¶¶ 43–49. However, this background is not enough to nudge Plaintiffs' allegation of Yahoo's involvement with this particular scheme "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Similarly, Yahoo's alleged misrepresentation of its liability in the United States does not permit a plausible inference that Yahoo was involved in the operation or management of the scheme in Mexico—Yahoo could just as easily have held a genuine belief that it would prevail on appeal in Mexican court, or misrepresented its liability out of fear that investors would panic if they knew the truth. *Cf. Twombly*, 550 U.S. at 556–57 ("Without more, parallel conduct does not suggest conspiracy[.]").

Plaintiffs have failed to adequately plead that Yahoo conducted the enterprise at issue in this case. The RICO claim against both Yahoo Defendants is therefore dismissed.

### C. Plaintiffs Fail to Plausibly Allege RICO Predicate Acts Against the Baker Defendants

The Court turns next to Plaintiffs' RICO allegations against the Baker Defendants. In order to successfully plead that either Baker US or Baker Mexico engaged in a pattern of racketeering activity, Plaintiffs must plausibly allege that the Defendant in question committed at least two RICO predicate acts. *DeFalco*, 244 F.3d at 306. The predicate acts alleged in the complaint can be divided into two groups. First, Plaintiffs claim that the Baker Defendants

9

committed extortion, both under the Hobbs Act, 18 U.S.C. § 1951, and under New York Penal Law ("NYPL") § 155.42.  Second, Plaintiffs claim that the Baker Defendants engaged in bribery and extortion through means that constitute mail fraud, 18 U.S.C. § 1341, wire fraud, *id.* § 1343, and violations of the Travel Act, *id.* § 1952.  The Baker Defendants respond that Plaintiffs fail to state a claim under any of these statutes.  They also argue that the statutes Plaintiffs invoke do not apply extraterritorially, and cannot reach the wrongdoing alleged in the complaint.  As explained in the sections that follow, the Court finds that Plaintiffs have failed to adequately plead RICO predicate acts against either of the Baker Defendants.

### 1.  Extortion Under the Hobbs Act and New York Penal Law

Plaintiffs allege that the Baker Defendants' successful efforts to reverse the $2.7 billion judgment against Yahoo constitute extortion in violation of the Hobbs Act, 18 U.S.C. § 1951, and NYPL § 155.42.  However, Plaintiffs fail to state a claim against the Baker Defendants under either statute.

A defendant is liable under the Hobbs Act if he "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion." 18 U.S.C. § 1951(a).  Extortion is defined by the statute as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." *Id.* § 1951(b)(2).

New York law treats extortion as a subset of larceny.  A defendant commits larceny "when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof." NYPL § 155.05(1).  Larceny becomes grand larceny in the first degree when the value of the stolen property exceeds $1 million.  *Id.* § 155.42.  Larceny can be committed by extortion.  *Id.* § 155.05(2)(e).  The statute defines extortion as follows: "A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third

person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will" commit one of a list of enumerated harmful acts.  *Id.*

Extortion under the Hobbs Act requires "a showing that the defendant did not merely seek to deprive the victim of the property right in question, but also sought to obtain that right for himself."  *United States v. Gotti*, 459 F.3d 296, 300 (2d Cir. 2006).  A defendant obtains property within the meaning of the Hobbs Act when he deprives another of a property right with "the intent to exercise, sell, transfer, or take some other analogous action with respect to that right." *Id.* at 324.  Similarly, the New York definition of extortion also requires that the defendant obtain property.  NYPL § 155.05(2)(e); *see Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 410 (2003) (state extortion offense must have requirement that defendant obtain property in order to serve as a RICO predicate).

The complaint fails to state a claim for extortion under either statute because it does not allege that the Baker Defendants obtained any property from Plaintiffs.  The only property interest Plaintiffs identify is "a property interest in Judge Segu's judgment, which was lost due to the RICO Defendants' use of bribery to obtain a favorable judgment."  Pls.' Br. at 29.  However, Segu's judgment did not confer a new property right on Plaintiffs.  Even after the non-final judgment was issued, Plaintiffs possessed at most only a property right in their Mexican cause of action, which would "not vest until a final unreviewable judgment [was] obtained."  *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1141 (9th Cir. 2009); *see Hosp. Ass'n of N.Y. State, Inc. v. Toia*, 577 F.2d 790, 797 (2d Cir. 1978) (party "possessed no vested right in the judgment entitling it to protection under the Due Process Clause because it had not yet become final and unreviewable").  A cause of action "is property of a substantially different nature than real or personal property or vested intangible rights," and "does not afford the holder the traditional bundle of rights associated with the ownership of property.  Instead, it represents a right to assert a claim for compensation or some other form of judicial relief.  Its value is contingent on successful prosecution to [final, unreviewable] judgment."  *In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 989 (9th Cir. 1987).

11

Moreover, assuming without deciding that a claim for extortion of a cause of action may lie under the Hobbs Act or NYPL, Plaintiffs do not allege that the Baker Defendants obtained the cause of action or the non-final judgment. Nothing in the complaint pleads that Defendants intended to "exercise, sell, transfer, or take some other analogous action with respect to" Plaintiffs' cause of action or non-final judgment. *See Gotti*, 459 F.3d at 324. Defendants simply sought to extinguish them. Plaintiffs inadvertently acknowledge this in their argument on this point, stating that "the RICO Defendants were only able to terminate Plaintiffs' property interest through the use fear [sic] of retaliation." Pls.' Br. at 30. Plaintiffs' non-vested interest in their cause of action was terminated, not obtained by any Defendant. Accordingly, Plaintiffs have failed to adequately plead extortion under either statute.

Because Plaintiffs fail to state a claim for extortion under either the Hobbs Act or New York law, the Court need not consider whether either statute applies extraterritorially.

### 2. Mail Fraud, Wire Fraud, and the Travel Act

The second group of RICO predicate acts Plaintiffs allege are violations of the mail fraud statute, 18 U.S.C. § 1341, the wire fraud statute, *id.* § 1343, and the Travel Act, *id.* § 1952 (collectively the "three statutes"). Plaintiffs allege that the three statutes were violated when the Baker Defendants, while located in the United States, took action remotely to further a corrupt scheme in Mexico. As explained below, the Court concludes that between these three statutes, Plaintiffs plausibly allege at most one predicate racketeering act attributable to the Baker Defendants. However, the three statutes do not apply extraterritorially, *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 140–41 (2d Cir. 2014), *cert. granted*, 136 S. Ct. 28 (2015), and Plaintiffs do not allege sufficient domestic conduct to support the application of the three statutes to the scheme described in the complaint. Plaintiffs therefore fail to adequately plead any predicate acts against the Baker Defendants.

### a. Elements of Mail Fraud, Wire Fraud, and the Travel Act

The "essential elements of a mail or wire fraud violation are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007). The phrase "scheme to defraud" does not imply common law fraud, but is instead "measured by a nontechnical standard. It is a reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society." *United States v. Trapilo*, 130 F.3d 547, 550 n.3 (2d Cir. 1997) (brackets and internal quotation marks omitted).

The Travel Act prohibits "travel[] in interstate or foreign commerce or use[ of] the mail or any facility in interstate or foreign commerce, with intent to . . . promote, manage, establish, carry on, or facilitate . . . any unlawful activity." 18 U.S.C. § 1952(a). Unlawful activity includes bribery or extortion as prohibited by federal law. *Id.* § 1952(b). A violation of the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. § 78dd-1 *et seq.*, a federal bribery statute, can be the basis for a Travel Act violation. *Reich v. Lopez*, 38 F. Supp. 3d 436, 446 (S.D.N.Y. 2014). The elements of a FCPA violation in this case are (1) that Defendants are either a domestic concern, or within the territory of the United States;

> (2) that [they] made use of a means or instrumentality of interstate commerce (3) corruptly (4) in furtherance of an offer or payment of anything of value to any person (5) while knowing that the money would be offered or given directly or indirectly to any foreign official (6) for purposes of influencing any act or decision of such foreign official in his official capacity.

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 327 F.3d 173, 180 (2d Cir. 2003).

### b. Plaintiffs Plausibly Allege At Most One RICO Predicate Act Under the Three Statutes

In contrast to the length and detail of the overall narrative recounted in the complaint, Plaintiffs' allegations regarding the Baker Defendants' violations of the three statutes are limited. Much of the complaint fails to allege with any specificity that the Baker Defendants used mails

or wires or travelled in interstate commerce as part of their bribery or fraudulent scheme—or which Defendant, exactly, is accused of doing what. The complaint states that "[t]he RICO Defendants violated the Travel Act through their bribery and extortionate activity as detailed herein, and as a result of their violation of the [FCPA] through their scheme to bribe Judge Azar and key Mexican judicial officials." Am. Compl. ¶ 140. Similarly, it proclaims that "[t]he RICO Defendants carried out this illegal conduct through repeated use of regular mail, electronic mail, faxes, wire transfers, and the telephone to communicate with each other, their co-conspirators, and Mexican judicial officials." *Id.* ¶ 142. But these are purely conclusory allegations little better than restating the elements of the offenses. As Plaintiffs note, if the mail or wire communications in support of a fraudulent scheme are not themselves alleged to be fraudulent, they do not need to meet the Rule 9(b) heightened pleading requirements. *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998). Be that as it may, nothing Plaintiffs point to purports to excuse a complaint alleging mail or wire fraud from providing "a detailed description of the underlying scheme *and the connection therewith of the mail and/or wire communications.*" *Id.* (emphasis added). With one exception, Plaintiffs fail to do so.

The only specific facts Plaintiffs plead in connection with their mail fraud, wire fraud, and Travel Act allegations relate to the draft opinions given to Segu on a USB stick. Am. Compl. ¶¶ 10, 85–86, 142. Plaintiffs allege that computer forensics "shows that [the draft opinions] were revised and possibly drafted on computers owned by Baker & McKenzie in the United States" before being transferred to Baker Mexico. *Id.* ¶ 86. Plaintiffs argue that the presence of these drafts—allegedly previously revised in the United States—in Mexico is sufficient for the Court to reasonably infer that Baker US used "regular mail, electronic mail, faxes, wire transfers, and the telephone" in the course of this scheme. *Id.* ¶ 142.

The Court agrees that Plaintiffs adequately plead the elements of mail fraud, wire fraud, and a Travel Act violation against Baker US (and against Baker Mexico as an accomplice) based on the facts alleged about the draft opinions. The allegation that computer forensics indicates that the draft opinion was revised on Baker's United States computers, *id.* ¶ 86, permits an

14

inference that Baker US was involved in the scheme. Sending the revised draft to Mexico certainly "furthered" (in the language of the mail and wire fraud statutes) or "facilitated" (in the language of the Travel Act), the scheme in this case. *See id.* ¶¶ 10, 85–86, 142. There are three ways the file could have been sent from the United States to Mexico: by mail (violating the mail fraud statute and the Travel Act), by email or similar electronic transfer (violating the wire fraud statute), or by being physically carried across the border (violating the Travel Act). The exact method by which the file was moved is information known only to the Baker Defendants—the kind of fact "peculiarly within the possession and control of the defendant" that a plaintiff may plead "upon information and belief." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Plaintiffs therefore appear to plausibly allege violations of all three statutes by the Baker Defendants.

There are two major caveats, however. First, "[i]t is not proper under RICO to charge two predicate acts where one action violates two statutes. A pattern of racketeering activity requires at least two *acts* of racketeering, not at least two statutory offenses." *Reich*, 38 F. Supp. at 446 (brackets and internal quotation marks omitted). Sending the draft opinions to Mexico constitutes at most one RICO predicate act. Because Plaintiffs have failed to plausibly allege any other predicate acts against the Baker Defendants (or the Yahoo Defendants, for that matter), the RICO claim must be dismissed for failure to plead a pattern of racketeering activity.

Second, even if Plaintiffs had adequately pled a second predicate act, their allegations relating to the draft opinions would still be insufficient to support a RICO claim. The reason is that the fraudulent bribery scheme alleged in the complaint (of which the allegations relating to the draft opinions are a part) primarily took place in Mexico. As explained in the next section, the three statutes do not apply extraterritorially, and Plaintiffs have not plausibly alleged sufficient domestic conduct to plead a domestic cause of action under any of them. As a result, the allegations regarding the draft opinion cannot serve as the basis for even a single RICO predicate act.

### c.  Plaintiffs Fail to Allege a Domestic Cause of Action Under the Three Statutes

The complaint does not adequately plead a violation of any of the three statutes because the underlying allegations describe extraterritorial wrongdoing with insufficient connection to the United States.  Unless Congress has clearly expressed its intention to give a statute extraterritorial effect, courts presume that its reach is limited to the United States.  *Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29, 32 (2d Cir. 2010) (citing *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010)).  RICO "is silent as to any extraterritorial application."  *Id.*  Instead, the extraterritorial reach of RICO is coextensive with that of the predicate acts alleged in the complaint as components of a pattern of racketeering activity.  *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 136 (2d Cir. 2014), *cert. granted*, 136 S. Ct. 28 (2015).  If plaintiffs allege violations of predicate acts with extraterritorial reach, RICO applies extraterritorially to those predicate acts.  *Id.*  The reach of RICO does *not* depend on whether the "enterprise" is domestic or foreign.  *Id.* at 138–39.  Only the predicate acts matter.  *Id.*

RICO can also reach predicate acts that are violations of non-extraterritorial statutes, even if the overall enterprise or scheme is primarily foreign—but only if the complaint "alleges sufficient domestic conduct" to sustain domestic causes of action for those predicate acts.  *Id.* at 141.  *European Community* squarely holds that mail fraud, wire fraud, and the Travel Act do not apply extraterritorially.  764 F.3d at 140–41.  The Court must therefore determine whether Plaintiffs have plausibly alleged sufficient domestic conduct to plead a domestic cause of action under any or all of the three statutes.

The Second Circuit has not determined precisely how much domestic conduct need be alleged to sustain the application of the three statutes, but its decisions nonetheless provide some guidance to the Court.  *Id.* at 142.  In *European Community*, the Second Circuit found that a complaint stated a domestic cause of action under the three statutes because it "allege[d] that defendants hatched schemes to defraud in the United States, and that they used the U.S. mails

and wires in furtherance of those schemes and with the intent to do so." 764 F.3d at 142.  It is equally clear, however, that "[s]imply alleging that some domestic conduct occurred cannot support a claim of domestic application." *Petroleos Mexicanos v. SK Eng'g & Constr. Co.*, 572 F. App'x 60, 61 (2d Cir. 2014).  In *Petroleos*, the Second Circuit held that a wire fraud scheme in which a foreign corporation defrauded foreign defendants was extraterritorial because the pleadings did not allege "that the scheme was directed from (or to) the United States," and because the "activities involved in the alleged scheme—falsifying the invoices, the bribes, the approval of the false invoices—took place outside of the United States." *Id.*  The (insufficient) domestic contacts alleged in that case were that "the financing was obtained here, the invoices were sent to the bank for payment, and the bank issued payment." *Id.*

Plaintiffs have plausibly alleged that Baker US "used the U.S. mails and wires in furtherance of [their] scheme[] and with the intent to do so." *European Cmty.*, 764 F.3d at 142. This may be necessary, but *Petroleos* makes clear that it is not sufficient: if the domestic conduct alleged is peripheral to the overall scheme, and the scheme is not directed to or from the United States, it does not matter that the defendant intentionally used U.S. wires in furtherance of a fraudulent scheme (since that was true of the "insufficient" domestic allegations in that case).

The Court concludes that Plaintiffs' wire fraud/mail fraud/Travel Act allegation falls closer to *Petroleos* than *European Community*.  Although the domestic conduct alleged—namely revising and possibly drafting the draft opinions eventually presented to Segu by Baker Mexico—is more central to the scheme alleged here than the banking transactions were in *Petroleos*, it is still fundamentally minor and peripheral in comparison to the core allegations of the complaint: that the Baker Defendants and their co-conspirators bribed, pressured, and intimidated members of the Mexican judiciary in pursuit of a favorable verdict.  And although Plaintiffs allege a scheme that is more connected to the United States than the scheme in *Petroleos*, their allegations supporting the domestic connections are threadbare and conclusory. The complaint alleges that the scheme was devised in and operated from the United States, for the benefit of a domestic corporation (Yahoo).  But the only fact Plaintiffs plead that

17

meaningfully supports the alleged domestic connections is the link between the draft opinions and Baker US. That is not enough to make the allegation that the scheme was invented in and controlled from the United States plausible to the Court, as opposed to merely conceivable. *See Twombly*, 550 U.S. at 570. Plaintiffs have not pled sufficient domestic conduct to support application of the mail fraud statute, 18 U.S.C. § 1341, the wire fraud statute, *id.* § 1343, or the Travel Act, *id.* § 1952, to the allegations in the complaint. Plaintiffs therefore fail to adequately plead any RICO predicate act under these statutes. For this reason, the RICO claims against the Baker Defendants must be dismissed. Furthermore, even if Plaintiffs had plausibly alleged that the Yahoo Defendants conducted the RICO enterprise, the complaint's failure to adequately plead two RICO predicate acts—against all Defendants, much less against a single Defendant—would be enough to dismiss the RICO claims against the Yahoo Defendants as well.

### D. Plaintiffs Fail to Plausibly Allege Continuity

In addition to Plaintiffs' failure to plausibly allege Yahoo's involvement in the conduct of the RICO enterprise and their failure to plausibly allege any RICO predicate acts attributable to any Defendant, Plaintiffs also fail to meet the continuity requirement necessary to show a pattern of racketeering activity, for reasons explained below. This failure is a separate and independent ground on which the RICO claims must be dismissed against *all* of the Defendants. *See Satinwood*, 385 F.3d at 180.

Continuity under RICO can take two forms: closed-ended or open-ended. *Id.* "Closed-ended continuity" means "a series of related predicate acts extending over a substantial period of time." *Spool v. World Child Int'l. Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008). This period refers to the timeframe during which racketeering acts occurred, "not the time during which the underlying scheme operated or the underlying dispute took place." *Id.* The Second Circuit has never found a period of less than two years to be "substantial." *Cofacredit*, 187 F.3d at 242; *see also Spool*, 520 F.3d at 184. Although this is not a bright line, it is unlikely that closed-ended continuity will be found in a shorter period of time—particularly if "the activities

18

involved only a handful of participants and do not involve a complex, multi-faceted conspiracy."
*Spool*, 520 F.3d at 184 (quoting *GICC Capital Corp. v. Tech. Fin. Grp.*, 67 F.3d 463, 468–69 (2d
Cir. 1995)) (brackets and internal quotation marks omitted).

Demonstrating open-ended continuity, by contrast, does not require Plaintiffs to plead
that the predicate acts took place over any particular span of time.  Instead, Plaintiffs must
establish "that there was a threat of continuing criminal activity beyond the period during which
the predicate acts were performed." *Cofacredit*, 187 F.3d at 242.

### 1.  The Duration of the Wrongdoing Alleged in the Complaint is Too Short to Plead Closed-Ended Continuity

Plaintiffs have not adequately pled closed-ended continuity.  Plaintiffs argue that
Defendants first engaged in racketeering activity "no later than 2012 and are still continuing
through to this day"—a period of three years. Pls.' Br. at 31.  However, the complaint does not
plead sufficient facts to render this period facially plausible.  The first factual occurrence
Plaintiffs allege in connection with any possible predicate act took place "on or around
November 26, 2012," when representatives of Baker Mexico allegedly met with Judge Azar and
bribed him. Am. Compl. ¶ 77.  Any continuing efforts by Defendants to overturn Segu's
judgment for Plaintiffs by influencing appellate judges concluded at the latest on May 15, 2013,
when the Mexican appeals court reversed the lower court decision. *See* Reyes Decl. Ex. 2-A, at
1.

Nowhere in the complaint do Plaintiffs allege that Defendants attempted to corrupt or
otherwise interfere with the federal *amparo* proceedings that occurred in the wake of the May 15,
2013 appellate ruling.  Plaintiffs criticize the decision of the Federal Civil Tribunal, the court that
initially heard their *amparo* claim.  They state that the Tribunal prepared a draft opinion favoring
their position, but ultimately ruled in favor of Defendants. Am. Compl. ¶ 118.  The published
decision, Plaintiffs allege, "repeated a number of the factual errors that were made by the Third
Appellate Court and lacked support for core legal contentions." *Id.* ¶ 119.  Neither the fact that
the Tribunal changed its mind during deliberations, nor the fact that the opinion may have been

19

flawed, give rise to an inference that the Tribunal was corrupted.  It is telling that Plaintiffs do not directly allege, even in a conclusory fashion, that the Mexican federal proceedings were improper.  These proceedings do not enlarge the timeframe in which the alleged RICO predicates were committed.

Instead, Plaintiffs rely on the fact that "several witnesses for the Plaintiffs claim that they still fear retaliation from Judge Azar or other of the RICO Defendants' agents."  Pls.' Br. at 31; *see* Am. Compl. ¶¶ 95, 121 (alleging that Segu has gone into hiding, and Plaintiff Worldwide founder Carlos Alberto Bazan Canabal felt forced to flee Mexico for the United States).  But the allegations that some individuals continue to feel threatened are both subjective and conclusory.  Plaintiffs fail to allege any facts that would permit the Court to infer that Segu or Bazan Canabal's evident fear stems from racketeering activity occurring after May 2013.  Indeed, the only illegal activity Plaintiffs allege after May 2013 is "an unlawful deposition of court clerks and staff" ordered by Judge Azar on or around December 5–6, 2013.  Am. Compl. ¶ 113.  However, Plaintiffs fail to adequately explain the significance of this deposition or to link it to any of the RICO predicate acts Defendants allegedly committed.

Thus, even if the Court assumed that Plaintiffs adequately pled all the RICO predicate acts set out in the complaint, they would still only establish a pattern of racketeering activity lasting at most from November 26, 2012, to May 15, 2013.  This is a period of less than six months.  Plaintiffs appear to concede that they must show that the RICO predicate acts were performed for a period covering "a minimum of two years."  Pls.' Br. at 32.  They make no argument that the circumstances of their case make a reduced time period for closed-ended continuity appropriate.  The facts pled in the complaint do not establish a course of racketeering activity anywhere near long enough for closed-ended continuity.  *See, e.g.*, *Spool*, 520 F.3d at 184 (sixteen months insufficient); *Satinwood*, 385 F.3d at 182 (seven months insufficient).

### 2.   The Scheme Alleged in the Complaint Is Insufficient to Plead Open-Ended Continuity Because It Was Inherently Terminable

Plaintiffs are similarly unable to adequately plead open-ended continuity.  The nature of the alleged scheme does not imply a threat of continued criminal activity in the way an organized crime gang would.  *See Satinwood*, 385 F.3d at 180–81.  On the contrary, the scheme at issue in this case is "inherently terminable," since the enterprise's alleged purpose was to end a single lawsuit with a judgment favorable to the Yahoo Defendants.  *See Spool*, 520 F.3d at 186; *GICC*, 67 F.3d at 466.  According to the complaint, that purpose was achieved, and the complaint does not plausibly allege that the threat of further criminal activity persists.

Plaintiffs argue in their memorandum of law that the RICO enterprise continues to exist to this day "for the purposes of continued manipulation of the Mexican Judicial system."  Pls.' Br. at 32.  The memorandum of law asserts that Defendants stand ready "to bribe or extort anyone who they might encounter in connection with their current Mexican litigation to ensure their desired results."  *Id.*  However, these statements are simply not representative of the complaint, which does not offer any such expansive vision of the RICO enterprise's purpose.  *See* Am. Compl. ¶ 133.  The most relevant language Plaintiffs cite states that the RICO conspiracy "continues to this day," *id.* ¶ 134, but this is conclusory and unconnected to any specific factual allegations.  In sum, the complaint as pled alleges at most "a serious, but discrete and relatively short-lived scheme to defraud a handful of victims through racketeering activity"—facts insufficient to support open-ended continuity.  *Cofacredit*, 187 F.3d at 244.

Because the complaint fails to plausibly allege either form of continuity, it fails to adequately plead a pattern of racketeering activity, and the RICO claim therefore fails against all Defendants.

### E.  Plaintiffs' RICO Conspiracy Claim Must Be Dismissed

The complaint's second count charges conspiracy to violate RICO, in violation of 18 U.S.C. § 1962(d).  Because the Court holds that the complaint fails to plausibly allege that any substantive violation of Section 1962(c) occurred, the associated conspiracy claim under Section

1962(d) must be dismissed as well. *Knoll v. Schectman*, 275 F. App'x 50, 51 (2d Cir. 2008); *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 461 (S.D.N.Y. 2014); *see Satinwood*, 385 F.3d at 182.

## IV. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims

Plaintiffs plead two state law tort claims: fraud and civil conspiracy. The Court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367(a). However, "district courts may decline to exercise supplemental jurisdiction" over a state law claim where "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). In evaluating whether to exercise supplemental jurisdiction over state law claims, district courts "balance the values of judicial economy, convenience, fairness, and comity." *Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006). However, "[i]t is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Id.*

In this case, the federal claims have been dismissed at an early stage prior to discovery, so there is no issue of judicial economy. This litigation was brought by Mexican corporations and concerns conduct that primarily occurred in Mexico, so there is nothing particularly convenient about litigating in New York federal court. The Court does not discern any significant concerns of fairness to litigants or comity to New York State. The Court therefore declines to exercise supplemental jurisdiction over the state law claims. *See FindTheBest.com*, 20 F. Supp. 3d at 461.

## V. Leave to Amend is Denied

Finally, Plaintiffs seek leave to amend "as new facts and evidence continue to come to light" in the event the Court finds the current complaint to be deficient. Pls.' Br. at 39. Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the

opposing party's written consent or the court's leave." The rule instructs that the Court "should freely give leave when justice so requires." *Id.* The decision of whether to grant leave to amend falls within the Court's discretion. *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009). If amendment is likely to be unproductive or futile, leave to amend should be denied. *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

Plaintiffs have already amended their complaint once in response to Defendants' initial motions to dismiss, pursuant to Rule 3.F of the Court's Individual Practices in Civil Cases. *See* Dkt. Nos. 49, 52. Plaintiffs fail to adequately explain how any further amendment would be productive. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC.*, 797 F.3d 160, 190 (2d Cir. 2015) (leaving "unaltered the grounds on which denial of leave to amend has long been held proper, such as undue delay, bad faith, dilatory motive, and futility"); *FindTheBest.com*, 20 F. Supp. 3d at 461–62. Because there is "no basis for suggesting, much less concluding, that plaintiffs could amend their claims . . . in a way that would make them viable," the Court sees no reason to grant Plaintiffs leave to amend. *Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*, 603 F.3d 144, 160 (2d Cir. 2010).

## VI.   Conclusion

The motions to dismiss the amended complaint are granted. The RICO claim under 18 U.S.C. § 1962(c) is dismissed against all Defendants for failure to plausibly allege (1) any RICO predicate acts committed by any Defendant, and (2) continuity. The RICO claim against the Yahoo Defendants is dismissed on the alternative ground that it fails to plausibly allege that they conducted the affairs of a RICO enterprise. The RICO conspiracy claim under 18 U.S.C. § 1962(d) is dismissed because the complaint fails to plausibly allege that any substantive violation of RICO occurred. The state law claims are dismissed because the Court declines to exercise supplemental jurisdiction over them. Leave to replead is denied. This resolves Dkt. Nos. 59 and 64. The Clerk of Court shall close the case.

23

SO ORDERED.


Dated: March 31, 2016
       New York, New York


_____
          ALISON J. NATHAN
      United States District Judge